IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHRIS CRABTREE ) | | |
| and LLOYD EVERHARDT ) | | |
| ) | | |
| PLAINTIFFS, ) | CIVIL ACTION NO.: | |
| ) | 1:11-cv-00529-WS-B | |
| v. ) | | |
| ) | | |
| VOLKERT, INC. ) | | |
| ) | | |
| DEFENDANT ) | | |
| ) | | |

**PARTIES' JOINT MOTION TO APPROVE SETTLEMENT**

Pursuant to the Court's Order of 1/17/13 (Doc. 55), the parties hereby submit the following additional briefing and exhibits in support of their Motion to Approve Settlement (Doc. 54):

I.   INTRODUCTION

The Court has ordered the parties to either (i) present argument and authorities explaining why the approach of *Kelly M. Smith v. Community Loans of America, Inc.*, cv-12-00187-KD-B (S.D. Ala. Jan. 9, 2013) should not be followed here, or (ii) supplement their Motion for approval of settlement in a manner that conforms with *Smith*. The four areas of deficiency identified by the Court follow from the principles articulated by the *Smith* decision, as summarized by the Court: "(i) courts reviewing FLSA settlements must evaluate them for fairness, considering a variety of factors

(including probability of success on the merits, range of possible recovery, opinions of counsel, etc.); (ii) confidentiality clauses in FLSA settlements should not be approved; (iii) broad pervasive release provisions in FLSA settlements generally should not be approved; and (iv) attorney's fees in FLSA settlements must be analyzed for reasonableness using a traditional lodestar analysis." (Doc. 55 at 2).

The parties hereby supplement their motion to show that the settlement as negotiated by the parties, is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d at 1355 (11th Cir. 1982). Plaintiffs will separately file papers in support of the allocation of attorney's fees provided for in the settlement. Under the facts of this case, the parties seek Court approval for the broad release and confidentiality provisions of the settlement agreement, as these provisions were mutually negotiated, fully and freely desired, and supported by adequate consideration.

II.   ARGUMENT

In general, settlement is the preferred means of resolving litigation. *See Williams v. Nat'l Bank*, 216 U.S. 582, 595 (1910); *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 391-92 (5th Cir. 1984). In addition, the existence of a "stronger presumption in favor of the fairness of a given settlement is hornbook law in the Eleventh Circuit, as is the recognition that a bona fide settlement represents a

"yielding of absolutes and an abandoning of highest hopes" in exchange for certainty and resolution. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).[1]

> A. The Settlement as Negotiated by the Parties Is a "Fair and Reasonable Resolution of a Bona Fide Dispute over FLSA Provisions."

*Lynn's Food* generally establishes that FLSA claims filed in Court may be settled with judicial approval, in this Circuit, but does not specify what form that approval must take:

> "[o]ther than a section 216(c) payment supervised by the Department of Labor, there is only one context in which compromises of FLSA back wage or liquidated damage claims may be allowed: a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d 1350, 1355 (11th Cir. 1982).

As the United States District Court for the Middle District of Florida has noted, however:

> "[s]hort of a bench trial, the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement. Many factors may be in play as the parties negotiate a compromise that is acceptable to both sides. The parties may disagree as to the number of hours worked by the plaintiff, the plaintiff's status as an exempt employee, or the defendant's status as a covered employer. In certain cases, the Defendant may assert (or threaten to assert) a counterclaim arising from the employment relationship. If the parties are represented

---

[1] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit.

>by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable. Rarely will the Court be in a position to declare that such a settlement is 'unreasonable.'"

*Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009). In support of this proposition, the *Bonetti* court noted in a footnote that "[s]uch a transaction would conform to the widely accepted definition of 'fair market value' -- i.e., 'the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts.'" *Id.* at 1227 n. 8.

Here, these difficulties are not extreme, as the factual record is well-developed and briefing has been extensive. In gauging the existence of a bona fide dispute surrounding the claims _____, this Court has the benefit not merely of the complaint and answer, but also of the parties' cross-motions for summary judgment and supportive briefing, all of which amply illustrate the existence of numerous bona fide disputes of fact and law, as expressed in the Court's Memorandum Order and Opinion (Doc. 42). *See, e.g.,* Doc. 42 at 16 ("the Court finds that there are genuine issues of material fact as to whether plaintiffs' primary duty included the exercise of discretion and independent judgment with respect to matters of significance, as required by 29 C.F.R. § 541.202(a)"); Doc. 42 at 30 ("For all of the foregoing reasons, the Court finds that Crabtree has successfully rebutted each of Volkert's

legitimate non-retaliatory reasons for selecting him (as opposed to other employees) for layoff in September 2011.")

These questions which cut to the very heart of this case, impart a highly uncertain nature to the eventual outcome of these parties' dispute.  Defendant disputes whether the FLSA even applied, contending that Plaintiffs were subject to the FLSA's administrative exemption and thus entitled to no recovery.  In support of this contention, Defendant pointed to an Opinion Letter from the Department of Labor purporting to exempt employees performing similar jobs from the overtime pay requirements of the FLSA.  (Doc. 32-22).  Despite the existence of this letter, Plaintiffs were able to defeat Defendant's Motion for Summary Judgment on their FLSA unpaid overtime claims.  However, this letter would have presented a formidable obstacle for Plaintiffs at trial if the Court had allowed it into evidence.  Likewise, although Plaintiff Crabtree produced sufficient evidence to survive summary judgment on the grounds that a reasonable jury might conclude that he was laid off instead of other employees because of his engagement in protected activity, there was no dispute that Volkert was in fact reducing its force due to a downturn in business, increasing the likelihood that the jury would accept Defendant's non-retaliatory explanation for its actions.

Moreover, Plaintiffs would have had significant hurdles in proving damages.

Plaintiffs could not rely on Defendant's own time records to establish the amount of overtime pay to which each Plaintiff would have been entitled if he prevailed; rather, Plaintiffs at trial would have had to produce sufficient evidence at trial, primarily through their own testimony, to show the amount and extent of their unpaid overtime work "as a matter of just and reasonable inference." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1315-1316 (11th Cir. 2007) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946)).  The burden then would have shifted to Volkert to rebut this evidence, resulting in an evidentiary tug-of-war.  Accordingly, it was impossible to predict with any certainty what amount Plaintiffs would have succeeded in recovering even if they prevailed on liability.

    B.    <u>The Settlements and its terms Are Fair and Reasonable</u>.

Given the clear existence of bona fide disputes, the remaining question for the Court is whether the settlement and its terms are reasonable.  The settlement was achieved through the mediation of the Honorable Sonja Bivens during a day-long settlement conference on January 8, 2013, after the Court's denial of Defendant's Motion for Summary Judgment, with trial looming during the February 2013 trial

term.[2] The Magistrate's mediation of this matter may itself confer reasonableness to the settlement. *See, e.g., Dennis v. Ruth Found., Inc.*, 2009 U.S. Dist. LEXIS 93421, 1-2 (S.D. Fla. Oct. 5, 2009) (noting that "[b]ased on the information received from Magistrate Turnoff, and the fact that the parties' settlement was approved by Magistrate Turnoff, the Court finds that the compromise reached by the parties under the terms of the Settlement Agreement is a fair and reasonable resolution of the parties' bona fide disputes"); see also *Collis v. Bank of Am. N.A.*, 2010 U.S. Dist. LEXIS 73490 (D. Md. July 19, 2010) (reasoning that "the fact that the Settlement Agreement was reached in the presence of Magistrate Judge Day, and after two prior settlement conferences in which Judge Day also participated, indicates to the Court that Plaintiff had every opportunity to fairly negotiate the terms of the agreement.")

Moreover, the settlement is reasonable given the amounts involved and the numerous factual and legal disputes, and the possibility that if the case had proceeded to trial, Plaintiffs would have collected little or nothing. Clearly, despite the existence of numerous material disputes of fact on every claim, significant evidentiary and legal obstacles stood between Plaintiffs and the attainment of the theoretical

---

[2]Neither the Magistrate Judge nor Defendant was involved in discussions of the amounts to be allocated to each Plaintiff or to Plaintiffs' counsel from the negotiated lump sum amount; accordingly, Plaintiffs will address these issues in the Declaration of Jon Goldfarb and in their Motion to Approve Allocation of Fees Under Settlement Agreement.

maximum awards. Given these challenges, Plaintiffs might well have recovered nothing and been obliged to compensate Defendant for its costs and/or attorney's fees. Likewise, Defendants might have had to pay far more than they paid in backpay and liquidated damages. In addition, if Plaintiffs prevailed, Defendant would have been on the hook for a large award of statutory attorney's fees.

      Both legally and factually, Mr. Crabtree's termination claim was the strongest claim in this case, and in monetary terms, it was also the most valuable; Plaintiff's counsel, based on their experience in previous cases, estimated that three-quarters of the value of the case arose from Mr. Crabtree's claims, with one-quarter of the value of the case arising from Mr. Everhardt's claims. (See Declaration of Jon Goldfarb, ¶ 9). The settlement amount was apportioned in accordance with this estimate upon the agreement of both Plaintiffs, as memorialized in a document signed by Plaintiffs and their counsel at the mediation. (Declaration of Jon Goldfarb, ¶ 9). If Plaintiffs had proceeded to trial and prevailed, the maximum amount of backpay Mr. Crabtree could have recovered was estimated at $80,011.41 on his termination claim and $16,633.92 on his overtime claims. The maximum amount Mr. Everhardt might have recovered on his backpay claim was estimated at $53,926.31, based on an estimate of working 5-10 overtime hours per week throughout his employment. (See Declaration of Jon Goldfarb, ¶10). These numbers do not include liquidated damages, which would have

been awarded at the discretion of the Court only if Plaintiffs had succeeded in proving that Defendants' violations of the FLSA were willful. On Plaintiffs' unpaid overtime claims, it was Plaintiff's counsel's opinion that liquidated damages would have been difficult to obtain, given the existence of the Department of Labor opinion letter purporting to exempt individuals such as plaintiffs from the overtime requirements of the FLSA. (Declaration of Jon Goldfarb, ¶10). If Plaintiffs had prevailed, they also would have been entitled to seek statutory attorney's fees from the Court.

Even if Plaintiffs had prevailed on all their claims and obtained the fullest extent of possible relief, they likely would not have received payment until all post-trial motions and appeals had been exhausted in their favor. Given that neither Plaintiff remains employed by Defendant, each placed considerable value on obtaining closure and finality along with the surety that a "bird in hand" brings. (Declaration of Jon Goldfarb, ¶10). Given the risks and uncertainty of proceeding to trial and the issues outlined above, these parties humbly submit that *the amount obtained for each plaintiff represents* a reasonable settlement of their respective claims in this hotly disputed case. See *King v. Wells Fargo Home Mortg.*, 2009 U.S. Dist. LEXIS 129054 (M.D. Fla. July 15, 2009) (holding that "[b]ecause the Plaintiff agreed to the settlement figure which was entered into knowingly and voluntarily,

after having the opportunity to fully discuss it with an attorney, the Court concludes that the proposed settlement is a fair and reasonable resolution of a bona fide dispute over the FLSA.")

      C.     The Confidentiality Clause is Reasonable on the Facts of this Case.

Unlike the typical case where the benefit of a confidentiality clause accrues chiefly to the employer, the confidentiality clause in this case was mutually negotiated; accordingly, the usual policy concerns that underlie Courts' refusal to enforce confidentiality agreements in FLSA cases are not present here. Judge DuBose's opinion in *Smith v. Community Loans* identifies two overriding policies against confidentiality clauses in wage cases: first, the "public-private character of an FLSA action and the regulatory effect of the FLSA," and second, the fact that typically, "confidentiality clauses work more to benefit the employer than the employee and are ancillary or 'side deals' apart from the bona fide dispute." *See Smith*, supra.

Here, Plaintiffs are no longer employed by Defendant and have little contact with their former co-workers. Accordingly, there is little chance that the confidentiality provision will serve to (1) "empower an employer to retaliate against an employee for exercising FLSA rights," (2) "effect[] a judicial confiscation of the employee's right to be free from retaliation," or (3) "transfer to the wronged employee

a duty to pay his fellow employees for the FLSA wages unlawfully withheld by the employer." *Id.*

More pertinently, Plaintiffs sought a mutual confidentiality provision in order to maximize their chances of obtaining future employment in the Right-of-Way industry. Indeed, in addition to the monetary consideration Volkert has agreed to provide, Plaintiff Crabtree succcessfully negotiated a provision wherein Volkert has agreed to provide him with a letter stating Mr. Crabtree's dates of employment and that his work met Volkert's expectations. As set forth in the Declaration of Mr. Jon Goldfarb, both Mr. Crabtree and Mr. Everhardt view Volkert's agreement to keep the circumstances of this lawsuit confidential as benefitting them more than their silence benefits Volkert, as neither of them intends to discuss this matter with anyone. (Declaration of Jon Goldfarb ¶ 12).

Other courts have recognized that confidentiality provisions in FLSA cases should be reviewed on a case-by-case basis, and may be enforceable on the particular facts of a given case. *See, e.g.*, *King v. Wells Fargo Home Mortg.*, 2009 U.S. Dist. LEXIS 129054 (M.D. Fla. July 15, 2009) (approving settlement and noting that "Pursuant to the Stipulation for Dismissal (Doc. # 23) and the Joint Settlement Report and Settlement Agreement (Doc. # 25), the parties have agreed to keep the terms of the settlement confidential. Accordingly, the parties submitted their Joint Settlement

Report in camera for the Court's review"); *Brabham et al v. Dale Cty. Comm'n.*, 1:11-cv410-SRW, doc. 35 (M.D. Ala. Dec. 16, 2011) (noting that "[d]espite the general presumption against confidentiality, during the fairness hearing the parties advanced sufficient justification for the confidentiality provision, which the court concludes does not thwart Congress's intent or frustrate implementation of FLSA rights, but rather seeks to avert retaliation from plaintiffs' co-workers for the attempt to vindicate those rights"); *see also Walker v. U.S. Title Loans, Inc.*, 2011 U.S. Dist. LEXIS 50174 (M.D. Ala. May 10, 2011) (noting that "[w]hile this Court appreciates and shares the policy concerns articulated by those courts, the Court finds that such concerns are not so adversely implicated in this case because the settlement agreements are public record and have not been requested to be placed under seal.")

Given the above, the parties jointly ask that the Court approve their mutually negotiated confidentiality provision.

### D.  The Broad Release is Valid and Enforceable on the Facts of this Case.

According to Judge DuBose's opinion in *Smith v. Community Loans*, "Courts are hesitant to approve broad releases in FLSA settlements because any discount or devaluation of the consideration for the FLSA claim as a result of this release renders the FLSA settlement unfair and unreasonable," both because "the FLSA obligates the employer without exception or condition to pay the full amount owed" and because

"an employer is not entitled to use an FLSA claim . . . to leverage a release from liability unconnected to the FLSA." *Id.* at 11.  None of these policies is implicated here, where the broad release was negotiated knowingly and voluntarily by plaintiffs in a fair compromise of the risk that other accrued claims might surface.

First, there is no reason to assume that the broad release in this or any other case has resulted in any "discount or devaluation of the consideration for the FLSA claim"; and it strains reason to assume that "a valuable, non-cash concession extended to the employer... effectively reduces the employer's payment by an amount equal to the value of the concession," as expressed by the *Moreno* order quoted by *Smith*.  *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1348-49 (M.D. Fla. Aug. 30, 2012).  On the contrary, a rational employer might pay <u>more</u>, not less, for a broad release than it would pay for a narrow release of claims.  *See, e.g., Brabham et al v. Dale Cty. Comm'n.*, 1:11-cv410-SRW, doc. 35 (M.D. Ala. Dec. 16, 2011) (noting that *"*[i]n addition, the court concludes that the global release granted by the plaintiffs in this case represents a fair compromise of the risk that other accrued claims will surface, given the circumstances set out at the fairness hearing, including the amount of the settlement.") In addition, the language regarding the employer's obligation "without exception or condition to pay the full amount owed" overlooks the longstanding principle that any settlement of "bona fide disputes" as to coverage or

13

the extent of unpaid overtime hours under the FLSA will necessarily represent a compromise, that "yielding of absolutes and an abandoning of highest hopes" in exchange for resolution. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

The concern that a broad release may somehow have been "leveraged" from unwilling and vulnerable plaintiffs is not applicable to this case, where all parties were represented by counsel and present at the settlement conference with Judge Bivens, and the plaintiffs have been advised of the full consequences of granting a broad release. (Declaration of Jon Goldfarb ¶ 13). *See King v. Wells Fargo Home Mortg.*, 2009 U.S. Dist. LEXIS 129054 (M.D. Fla. July 15, 2009) (holding that "[b]ecause the Plaintiff agreed to the settlement figure which was entered into knowingly and voluntarily, after having the opportunity to fully discuss it with an attorney, the Court concludes that the proposed settlement is a fair and reasonable resolution of a bona fide dispute over the FLSA.") Here, Plaintiffs have not given a broad release for "a few hundred or a few thousand dollars to which [they are] otherwise unconditionally entitled," as expressed by the *Moreno* opinion quoted by Judge DuBose. *Smith* at 11. Rather, each is to receive a substantial settlement of funds to which his legal entitlement is hotly disputed, given the numerous bona fide disputes over liability and damages; this settlement and its terms were negotiated over a considerable period of time by experienced counsel with the full involvement of

their clients and the assistance of the Magistrate Judge as mediator. There simply is no reason to conclude that the settlement or any of its terms, on the facts of this case, are not fair and reasonable.

III.     CONCLUSION

Given the above authority and reasoning, the parties jointly request that the Court approve their settlement as a "fair and reasonable resolution of a bona fide dispute over FLSA provisions," following the logic of *Lynn's Food Stores*, 679 F.2d at 1355.

        Respectfully Submitted,

        */s/ L. William Smith*
        Jon C. Goldfarb asb-5401-f58j
        Daniel E. Arciniegas asb-7809-d67a
        L. William Smith asb-8660-A61S
        Counsel for Plaintiff

**OF COUNSEL:**
WIGGINS, CHILDS, QUINN & PANTAZIS LLC
301 19th Street North
Birmingham, Alabama 35203
Telephone No.: (205) 314-0500
Facsimile No.: (205) 254-1500

        */s/ Tracy P. Turner*
        Wade B. Perry, Jr.
        Tracy P. Turner
        Jonathon J. B. Segarra
        Counsel for Defendant

**OF COUNSEL**:
JOHNSTONE, ADAMS, BAILEY, GORDON & HARRIS, LLC
PO Box 1988
Mobile, AL 36633
Telephone No.: (251) 432-7682
Facsimile No.: (251) 432-2800