IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **CHRIS CRABTREE,** *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION 11-0529-WS-B |
| ) | |
| **VOLKERT, INC.,** ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This matter comes before the Court on the Parties' Joint Motion to Approve Settlement (doc. 56) and Plaintiff's Submission in Support of Attorney's Fees, Expenses and Costs (doc. 57). Also pending is a predecessor iteration of the Joint Motion for Approval of Settlement (doc. 54).

**I.     Procedural History.**

Plaintiffs, Chris Crabtree and Lloyd Everhardt, brought this action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), against defendant, Volkert, Inc. Plaintiffs alleged that Volkert had violated the FLSA by failing to pay them overtime compensation for hours worked in excess of 40 in a workweek; however, Volkert responded that Crabtree and Everhardt were owed no overtime premium pay because they qualified for the FLSA's administrative exemption. Additionally, plaintiff Crabtree brought a separate FLSA retaliation claim, alleging that Volkert had fired him for the statutorily protected activity of complaining that he was being denied FLSA overtime compensation. Volkert disputed the retaliation claim, insisting that it had terminated Crabtree's employment for legitimate business reasons unrelated to his internal complaint about unpaid overtime.

By all accounts, this litigation was hard-fought and vigorously contested from its inception. On December 7, 2012, the undersigned entered an Order (doc. 42) addressing the parties' lengthy cross-motions for summary judgment. The December 7 Order concluded that, while plaintiffs were paid on a salary basis (as required for eligibility for the FLSA

administrative exemption), genuine issues of fact remained as to whether their primary duties included the exercise of discretion and independent judgment with respect to matters of significance, as required by 29 C.F.R. § 541.202(a).  Given this material factual dispute about the job duties of Crabtree and Everhardt, the December 7 Order determined that whether plaintiffs were subject to the FLSA administrative exemption (and, hence, whether Volkert owed them overtime compensation) was a triable issue that could not be resolved as a matter of law.  With respect to Crabtree's FLSA retaliation claim, the December 7 Order likewise found genuine issues of material fact as to whether Volkert fired him because he complained about unpaid overtime (as Crabtree maintained) or because the project to which he was assigned had come to an end and there was no more work available (as Volkert maintained).  This matter was set for trial in the February 2013 civil term.

A month after the summary judgment ruling, on January 8, 2013, the parties participated in a judicial settlement conference with Magistrate Judge Bivins.  That conference was successful.  In exchange for the dismissal of plaintiffs' lawsuit with prejudice, Volkert agreed to pay Everhardt and Crabtree, collectively, a lump sum of $150,000.00, to resolve all of their claims (including claims for FLSA overtime, FLSA liquidated damages, retaliation damages, attorney's fees and costs) in full.  Plaintiffs and their counsel then devised an allocation of this lump-sum amount, under which (i) Everhardt would be paid a gross amount of $37,500.00; (ii) Crabtree would be paid a gross amount of $112,500.00; (iii) of Everhardt's settlement proceeds, some $16,500.00 (or 44%) would be allocated as attorney's fees and costs pursuant to a contingency fee agreement; and (iv) of Crabtree's settlement proceeds, some $49,500.00 (or 44%) would be allocated as attorney's fees and costs pursuant to a contingency fee agreement. The ensuing settlement documentation included mutual confidentiality provisions ("except as may be ordered otherwise by a Court of competent jurisdiction") and so-called pervasive releases, under which each plaintiff agreed to release and forever discharge Volkert "of and from any and all claims, demands, actions, rights, causes of action, and suits at law or in equity, of whatever kind or nature, which have arisen or may arise in the future … as a result of or arising from [plaintiff]'s employment with Volkert," or (in Crabtree's case) the termination of same.

The parties now jointly seek judicial approval of their settlement, and have helpfully submitted supplemental briefs that delineate the legal and factual bases for their contention that

this settlement passes muster under the fairly rigorous review standards attendant to FLSA settlements.[1]

## II.     Analysis.

### A.     *Congressional Mandate of Judicial Approval of FLSA Settlements.*

In the overwhelming majority of civil actions brought in federal court, settlements are not subject to judicial oversight, scrutiny, or approval.  Congress has dictated, however, that FLSA settlements are not like those in the overwhelming majority of civil actions.  Indeed, "Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between employers and employees." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982); *see also Hogan v. Allstate Beverage Co.*, 821 F. Supp.2d 1274, 1281 (M.D. Ala. 2011) ("Settlement of an action under the FLSA differs from settlement of other claims. … [T]he FLSA's provisions are mandatory and generally not subject to bargaining, waiver, or modification by contract or settlement."); *Moreno v. Regions Bank*, 729 F. Supp.2d 1346, 1348 (M.D. Fla. 2010) ("Settlement of an action under the FLSA stands distinctly outside the practice common to, and accepted in, other civil actions.").

"Despite this general rule, an employer and an employee may settle a private FLSA suit under the supervision of the district court" where there is a "bona fide dispute over FLSA coverage." *Hogan*, 821 F. Supp.2d at 1281-82.  Thus, "[w]hen employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food*, 679 F.2d at 1353; *see also Miles v. Ruby Tuesday, Inc.*, 799 F. Supp.2d 618, 622-23 (E.D. Va. 2011) ("the reason judicial approval is required for FLSA settlements is to ensure that a settlement of an FLSA claim does not undermine the statute's terms or purposes"); *Burkholder v. City of Ft. Wayne*, 750 F. Supp.2d 990, 994-95 (N.D. Ind. 2010) ("[s]tipulated settlements in a FLSA case must be approved by the Court … because there is a fear that employers would coerce employees into settlement and waiver of their claims") (citations and

---

[1] In their filings, the parties have fulfilled their obligation of providing sufficient information for the Court to assess the *bona fides* of their dispute, and the precise contours of their resolution. *See, e.g., Dees v. Hydradry, Inc.*, 706 F. Supp.2d 1227, 1241 (M.D. Fla. 2010) ("the parties requesting review of an FLSA compromise must provide enough information for the court to examine the bona fides of the dispute").

internal quotation marks omitted). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food*, 679 F.2d at 1354; *see also Hogan*, 821 F. Supp.2d at 1281 (settlements of private FLSA suits "are intended principally to resolve controversy over any FLSA terms actually in dispute").

Plainly, then, *Lynn's Food* teaches that district courts must scrutinize FLSA settlements for fairness. The objective of this inquiry is "to ensure that employees have received all uncontested wages due and that they have received a fair deal regarding any additional amount that remains in controversy." *Hogan*, 821 F. Supp.2d at 1282. In reviewing FLSA settlements under *Lynn's Food*, courts "should be mindful of the strong presumption in favor of finding a settlement fair." *Bennett v. D.L.S. Marketing, LLC*, 2009 WL 1309758, *2 (M.D. Fla. May 7, 2009); *see also Wingrove v. D.A. Technologies, Inc.*, 2011 WL 7307626, *2 (N.D. Ga. Feb. 11, 2011) (recognizing "strong presumption" that FLSA settlements are fair and reasonable to plaintiffs); *Howell v. Dolgencorp, Inc.*, 2011 WL 121912, *1 (N.D. W.Va. Jan. 13, 2011) (similar). Indeed, one district court has accurately observed that, in the absence of a bench trial, "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement" and that "[i]f the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable." *Bonetti v. Embarq Management Co.*, 715 F. Supp.2d 1222, 1227 (M.D. Fla. 2009). Such is the case here.

### B.     *Whether the Settlement is Fair and Reasonable.*

After careful review of the record, the Court readily concludes that plaintiffs' settlement with Volkert constitutes a fair and reasonable compromise of a *bona fide* FLSA dispute. Defendant has a colorable (and perhaps even compelling) argument that Crabtree and Everhardt were subject to the FLSA's administrative exemption, such that they are owed no overtime compensation. Although factual disputes over plaintiffs' job duties (and principally their degree of discretion and independent judgment with respect to matters of significance under 29 C.F.R. § 541.202(a)) prevented the exemption issue from being definitively resolved short of trial, it is quite possible that a reasonable jury would have found Crabtree and Everhardt to be covered by

the administrative exemption, and therefore entitled to no backpay for overtime hours.[2] Furthermore, even if Crabtree and Everhardt had prevailed on that issue, Volkert would have had a strong argument that its failure to pay them overtime was in good faith and that it had reasonable grounds for believing that such omission did not violate the FLSA, such that no liquidated damages award was appropriate. *See, e.g., Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1282-83 (11th Cir. 2008) (discussing legal standard for imposition of liquidated damages).

In addition to finding a *bona fide* dispute as to whether Volkert owed plaintiffs anything on their FLSA claims, the Court perceives the settlement amount to be a fair and reasonable compromise of that dispute. Plaintiffs' counsel estimates that a best-case scenario at trial would have been an award of around $96,000 in back wages for Crabtree, and around $54,000 in back wages for Everhardt, with no liquidated damages. (Goldfarb Aff. (doc. 57-1), at ¶ 10.) Viewed through that lens, and given the substantial legal and factual obstacles at trial, the substantial uncertainty of plaintiffs prevailing on their FLSA claims, and the considerable delay that plaintiffs would have likely experienced in receiving payment even if they did prevail at trial, settlement of such causes of action in the agreed-upon amounts appears entirely reasonable. This conclusion is reinforced by the fact that plaintiffs were ably represented during the settlement negotiations by capable, experienced counsel with extensive experience in complex employment law cases. (*Id.*, ¶ 5.) *See generally King v. Wells Fargo Home Mortg.*, 2009 WL 2370640, *2 (M.D. Fla. July 30, 2009) ("Because the Plaintiff agreed to the settlement figure which was entered into knowingly and voluntarily, after having the opportunity to fully discuss it with an attorney, the Court concludes that the proposed settlement is a fair and reasonable resolution of a bona fide dispute over the FLSA.").

For all of the foregoing reasons, the Court determines that the parties' agreed-upon settlement amount is a fair and reasonable resolution of a *bona fide* dispute as to each of plaintiffs' FLSA causes of action, for purposes of *Lynn's Food* and its progeny. There are no

---

[2] Similar concerns would have attached to Crabtree's FLSA retaliation claim had it gone to trial. After all, Volkert put forward a legitimate non-retaliatory reason for terminating Crabtree's employment, and a reasonable jury could have come out either way on that claim.

uncontested wages due and owing to plaintiffs, and they have plainly received a fair deal regarding the sums that were in controversy.

  C. *The Confidentiality Provisions.*

  Determining that the settlement amount is fair and reasonable does not conclude the Court's inquiry.  As noted, the proposed settlement includes confidentiality provisions under which Crabtree, Everhardt and Volkert all agreed "to keep confidential all matters relating to this litigation, specifically including all information, documents or materials concerning said released claims and rights, except as may be ordered otherwise by a Court of competent jurisdiction or in order to file the Undersigned's taxes." (Doc. 54-1, at 3; doc. 54-2, at 3.)  These confidentiality clauses diverge materially from those in most FLSA actions, where the focus is on keeping the terms of settlement a secret so as to discourage copycat lawsuits.  Here, the confidentiality provisions reach much further, and are designed on their face to prevent the parties from discussing "all matters relating to this litigation."  Plaintiffs' counsel explains that his clients pressed for the inclusion of those confidentiality provisions during settlement negotiations, as a means of protecting their reputations and employment prospects in the Right-of-Way industry. (Goldfarb Aff., ¶ 12.)  Indeed, plaintiffs' counsel indicates that Crabtree and Everhardt "view Volkert's agreement to keep the circumstances of this lawsuit confidential as benefitting them more than their own silence benefits Volkert." (*Id.*)

  The Court is aware, of course, that a substantial body of authority has denounced the use of confidentiality clauses in FLSA settlements.  These courts have sharply criticized such provisions as (i) operating unequally to the benefit of the employer alone, and (ii) frustrating FLSA goals by "thwart[ing] the public's independent interest in assuring that employees' wages are fair."  *Hogan*, 821 F. Supp.2d at 1283 (citation omitted); *see also Dees*, 706 F. Supp.2d at 1242 ("By including a confidentiality provision, the employer thwarts the informational objective of the notice requirement by silencing the employee who has vindicated a disputed FLSA right.").  That said, most courts addressing such FLSA confidentiality provisions have not declared them to be *per se* unenforceable and violative of public policy.  Rather, all but the most doctrinaire opinions on the subject acknowledge that there may be circumstances where confidentiality provisions may be appropriate and should be accepted.  *See, e.g., Killion v. KeHE Distributors*, --- F. Supp.2d ----, 2012 WL 3201889, *10 (N.D. Ohio Aug. 3, 2012) (pointing out that "other courts have nonetheless approved confidential settlements of FLSA claims");

*Bartelloni v. DeCastro*, 2007 WL 2155646, *1 (S.D. Fla. July 26, 2007) (courts "must weigh the interests in favor of openness – *i.e.*, judicial transparency – against the interest of the parties in keeping the matter secret."); *Stalnaker v. Novar Corp.*, 293 F. Supp.2d 1260, 1264 (M.D. Ala. 2003) (recognizing that there may be a "compelling reason" to seal FLSA agreements from public scrutiny, and that courts should weigh interests of judicial transparency in FLSA cases against the parties' interest in secrecy); *King*, 2009 WL 2370640, at *2 (approving confidential FLSA settlement after *in camera* review).

       In the Court's view, this is just such a case where the balance tips in favor of approving the parties' settlement agreements, notwithstanding their inclusion of confidentiality provisions. The rationale that confidentiality clauses are unfair "side deals" benefiting the employer alone at employees' expense holds no water here, inasmuch as plaintiffs have established that they (not Volkert) were the driving force animating the inclusion of broad confidentiality clauses in their settlement agreements. Likewise, this case is not one where the confidentiality clause is designed to protect Volkert's business interests at the expense of Crabtree and Everhardt; rather, the clause is in place to benefit plaintiffs in their quest to remain gainfully employed in the Right-of-Way industry.[3] As for the "public's independent interest in assuring that employee's wages are fair," the Court finds that this interest is adequately safeguarded by the disclosure in this Order of the monetary terms of the FLSA settlement. Case law emphasizes that if FLSA confidentiality provisions are allowed, "Congress and the public lose the ability to assess whether the settlement is consistent with the statute's terms and purposes." *Miles*, 799 F. Supp.2d at 623. No such loss occurs here. By perusing the court file in this case, Congress and the public can readily obtain comprehensive information about the nature and strength of Crabtree's and Everhardt's claims, the amount of damages they sought, and the specific amounts for which they settled their claims. Under the circumstances, the public's rights are adequately

---

[3] As the Court understands it, Crabtree and Everhardt have both separated from Volkert, but intend to continue working in the same industry. If Volkert were to communicate with its peers in the industry about plaintiffs' lawsuit or the settlement of same, that occurrence could jeopardize plaintiffs' careers. In that regard, this case is readily distinguishable from those in which courts have refused FLSA confidentiality provisions based on sentiments such as the following: "A business's general interest in keeping its legal proceedings private does not overcome the presumption of openness in the circumstances presented in this case." *Stalnaker*, 293 F. Supp.2d at 1264.

protected. To go further would be to harm unreasonably the interests of Crabtree and Everhardt for (at best) a modest incremental gain in transparency that would not materially promote the public's right to assure that Volkert paid Crabtree and Everhardt fairly. Accordingly, in the specific circumstances of this case, the Court will approve the settlement, notwithstanding the confidentiality provisions set forth in the settlement agreement.

>    D.     *The Pervasive Releases.*

As noted, the settlements contain so-called pervasive or global releases, in which Crabtree and Everhardt released all claims and causes of action they had or may have against Volkert, not just the FLSA claims. The practice of including such pervasive releases in FLSA settlement agreements has sparked the ire of certain district courts. *See, e.g., Moreno*, 729 F. Supp.2d at 1351 (opining that "an employer is not entitled to use an FLSA claim … to leverage a release from liability unconnected to the FLSA" because "[a] pervasive release in an FLSA settlement introduces a troubling imponderable into the calculus of fairness and full compensation," even while acknowledging that "[i]n nearly every case, the pervasive release confers no benefit on the employer because the employee has no other claim"). As a counterweight, however, other courts have rebuffed this line of authority as overly paternalistic in overriding the plaintiff's willingness to assent to such a release as part and parcel of a comprehensive settlement. *See, e.g., Jarvis v. City Elec. Supply Co.*, 2012 WL 933057, *6 (M.D. Fla. Mar. 5, 2012) ("to the Court's mind, a finding that such additional non-cash concessions destroy the notion of full compensation disregards the fact that the employee *agreed* to the non-cash term," such that "what interest is being safeguarded by overriding the express wishes of the plaintiff in the matter and finding that the full compensation offered is, in fact, not enough?").

Upon review of the authorities on this question, the Court concludes that the most appropriate balance between these dueling absolutist views was struck by the Middle District of Alabama in *Hogan*. In that case, the court reasoned that pervasive releases "should be examined closely" in FLSA cases because of the risk that an "employee would unknowingly make a valuable concession to the employer simply to recover wages that should never have been withheld in the first place," and should be approved only where "the employee has a full understanding of what he is releasing in exchange for a settlement award." *Hogan*, 821 F. Supp.2d at 1284-85.

That non-trivial standard is satisfied here. Plaintiffs' counsel has submitted compelling evidence that Crabtree and Everhardt were fully aware of the risks entailed by agreeing to a broad release in Volkert's favor, that they "have entered into this settlement with full knowledge and acceptance of such risks," and that they view the acceptance of these risks "as a reasonable compromise" in the larger scheme of the overall settlement package. (Goldfarb Aff., ¶ 13.) There is no indication that plaintiffs have or would have had any viable non-FLSA claims against Volkert, or that the global nature of the release confers any meaningful benefit upon Volkert, or works any meaningful detriment on plaintiffs. Furthermore, as outlined previously, this is <u>not</u> a case in which "full compensation" was unquestionably owed to plaintiffs on their FLSA claims. For the reasons stated *supra*, Crabtree and Everhardt would have faced a dubious, uncertain and difficult road at trial, and may well have recovered nothing. So the notion that plaintiffs made a non-cash concession to obtain wages that Volkert owed them anyway under the FLSA has no application here. More broadly, plaintiffs decided (with the full benefit of legal advice from their eminently qualified counsel) to release all claims they had or might have (not just the FLSA claims) in exchange for the settlement payment from Volkert. Given the clear record showing that plaintiffs were fully advised in the premises upon agreeing to the non-cash concession set forth in the pervasive release, this Court will not strike down this compromise as uncompensated, unevaluated and unfair under a *Lynn's Food* analysis. This is not a case in which a broad release was leveraged from unwilling, vulnerable plaintiffs who did not appreciate the value of that concession or understand what it was they were surrendering. Nor is it a case in which full compensation to plaintiffs on their FLSA claims was effectively diluted by their voluntary assent to such a concession.

In short, given the particular facts and circumstances presented here, this Court finds that the broad releases granted by Crabtree and Everhardt represent a fair, knowing compromise of the risk that other accrued, unknown claims will surface, and that it in no way renders the settlement unfair or unreasonable under *Lynn's Food*.

      **E.**    *Attorney's Fees.*

A potentially troublesome aspect of the settlement in this case is that Volkert agreed to pay plaintiffs a lump sum of $150,000, after which plaintiffs and their counsel divvied it up by agreeing that $66,000 would be paid to plaintiffs' counsel as attorneys' fees and costs pursuant to a contingency fee arrangement. The Eleventh Circuit has counseled (albeit in an unpublished

and therefore non-binding opinion) that, in the contingency fee context, a court reviewing an FLSA settlement must review "the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 2009 WL 73164, *2 (11th Cir. Jan. 13, 2009). According to *Silva*, "[t]o turn a blind eye to an agreed upon contingency fee in an amount greater than the amount determined to be reasonable after judicial scrutiny runs counter to FLSA's provisions for compensating the wronged employee." *Id.*[4]

It is well established that "[t]he starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate …. The product of these two figures is the lodestar and there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (internal citations and quotation marks omitted).[5]  Of course, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry.  There

---

[4] In the wake of *Silva*, persuasive district court authority has deemed scrutiny of the reasonableness of plaintiff's agreed-upon attorney's fees to be unnecessary in an FLSA settlement where "the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff," except in circumstances where "the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney." *Bonetti*, 715 F. Supp.2d at 1228; *see also Wing v. Plann B Corp.*, 2012 WL 4746258, *4 (M.D. Fla. Sept. 17, 2012) (declining to examine reasonableness of attorney's fee payment in FLSA settlement where the FLSA claims were compromised, there was a reasonable basis for such compromise, and "Plaintiff's claims were resolved separately and apart from the issue of attorneys' fees," such that "there is no reason to believe that Plaintiff's recovery was adversely affected by the amount of fees and costs to be paid to Plaintiff's counsel"). This case differs materially from *Bonetti* and *Wing*, in that Crabtree's and Everhardt's FLSA claims were not resolved separately, independently and seriatim from their lawyer's fee award; therefore, the Court will review the reasonableness of the proposed attorney's fee award. *See Filippone v. DHD Investments, LLC*, 2012 WL 5989644, *2 (M.D. Fla. Nov. 26, 2012) ("The parties have not represented that counsel's fees were negotiated separately from Plaintiffs' claims or that the fees do not affect the amounts to be paid to Plaintiffs. Accordingly, the Court must perform a lodestar analysis of counsels' fees.").

[5] *See also Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (to fashion a fee award, the court "is to multiply hours reasonably expended by a reasonable hourly rate"); *Mayson v. Pierce*, 806 F.2d 1556, 1557 (11th Cir. 1987) ("The starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.").

remain other considerations that may lead the district court to adjust the fee upward or downward." *Cullens v. Georgia Dep't of Transp.*, 29 F.3d 1489, 1492 (11th Cir. 1994) (citation omitted); *see also Association of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006) ("In calculating a reasonable attorney's fee award, the court must multiply the number of hours reasonably expended on the litigation by the customary fee charged in the community for similar legal services to reach a sum commonly referred to as the 'lodestar.' ... The court may then adjust the lodestar to reach a more appropriate attorney's fee, based on a variety of factors, including the degree of the plaintiff's success in the suit."); *Reynolds v. Alabama Dep't of Transp.*, 926 F. Supp. 1448, 1453 (M.D. Ala. 1995) ("After calculating the lodestar fee, the court should then proceed with an analysis of whether any portion of this fee should be adjusted upward or downward.").[6]

Plaintiffs' counsel has submitted detailed billing records, supporting both the number of reasonable hours expended on the case and the reasonable rates claimed by counsel. Plaintiffs' calculations show that the lodestar amount of attorneys' fees accrued in this case to date is $61,950.00, along with $8,922.45 in costs and expenses. (Doc. 57, Exh. A.) Upon review of these records, the Court does not agree with the reasonableness of all the hours claimed (*i.e.*, billing for multiple attorneys to travel from Birmingham to Mobile for depositions and settlement conference). Furthermore, certain claimed expenses (*i.e.*, triple-billing for a single federal court civil filing fee on September 14, 2011; billings for legal research costs that are properly classified as non-billable overhead) appear redundant or otherwise unreasonable. Nonetheless, the Court also finds that the vast majority of the claimed hours and expenses do appear reasonable and appropriate under a lodestar analysis. While the undersigned is not entirely convinced of the reasonableness of the hourly rates claimed (particularly that sought for

---

[6] In this case, plaintiffs' counsel insists that *Silva* was wrongly decided and that lodestar principles should have no bearing on evaluation of the amount of attorney's fees approved in FLSA settlements. According to plaintiffs' counsel, courts approving FLSA settlement agreements should not and cannot look behind contingency fee arrangements into which plaintiffs and their lawyers voluntarily enter in an FLSA case, so the lodestar is irrelevant. Although such an argument does not appear to have found favor in published or unpublished FLSA precedents in this Circuit, the Court need not and will not address this issue herein because the proposed fee amount is reasonable even under a traditional lodestar analysis.

L. William Smith, Esq., an associate with just three years of experience),[7] those rates are close enough to a reasonable level that their adjustment for lodestar purposes would be modest. In short, the fees and costs due plaintiffs' counsel under a lodestar analysis are comparable in scope and magnitude to the $66,000 that plaintiffs' counsel seek under the settlement agreements in this case.[8]

Another way to think about it (one that takes into account the 12 factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974))[9] is as follows: This was a hard-fought case that played out over the span of nearly 15 months in federal court. Plaintiffs' skilled counsel, who were working on a contingent-fee basis, devoted more than 250 hours to litigating this case, from the pleadings stage through a substantial discovery period into a labor-intensive bout of cross-motions for summary judgment and finally through a day-long

---

[7] To justify the claimed rate for Smith, plaintiffs' counsel relies on authority from the Northern District of Alabama. Hourly rate scales in Birmingham, however, are of little benefit in a Mobile-based lawsuit. After all, "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. "The general rule is that the relevant market for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (citation and internal quotation marks omitted). Nor is it persuasive for plaintiffs' counsel to argue that Attorney Smith merits a rate commensurate to that awarded to a colleague with more three times his legal experience.

[8] Recall that plaintiffs contend that a lodestar analysis would entitle them to $71,872.45 in attorneys' fees and costs. Were the Court to go line by line, item by item through those billing records, a reasonable estimate is that 10% would be shaved off that figure because of redundant or otherwise uncompensable entries and unreasonable billing rates. The resulting figure (approximately $64,685.20) is comparable to the $66,000 in attorney's fees and costs for which the settlement agreements provide.

[9] Those factors are as follows: "1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to the acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the 'undesirability' of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1340 n.7 (11th Cir. 1999); *see also Bivins*, 548 F.3d at 1350 ("In determining what is a reasonable hourly rate and what number of compensable hours is reasonable, the court is to consider the 12 factors enumerated in *Johnson*.").

judicial settlement conference that culminated in a favorable outcome for plaintiffs. There were difficult (and potentially intractable) legal obstacles involved (*i.e.*, the status of Volkert's Real Estate Specialists as exempt or nonexempt under the FLSA's administrative exemption). Plaintiffs' claims were of doubtful and uncertain merit, rendering the case somewhat undesirable. Considering all of the above factors, the Court finds that, to the extent a lodestar analysis would yield a lower figure, upward adjustment of the lodestar amount pursuant to *Johnson* to equal the proposed payment of $66,000 to plaintiffs' counsel for attorney's fees and costs is reasonable and appropriate. The Court also finds that the proposed allocation of attorney's fees does not undermine the fairness or reasonableness of the amounts received by Crabtree and Everhardt ($63,000 and $21,000, respectively) for purposes of this FLSA settlement.

### III.    Conclusion.

For all of the foregoing reasons, it is **ordered** that the parties' Joint Motions to Approve Settlement (docs. 54, 56) are due to be, and the same hereby are, **granted**. The settlement of plaintiffs' FLSA claims is **approved** as fair and reasonable pursuant to the analysis required by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). A stipulated final judgment will be entered separately.

DONE and ORDERED this 14th day of February, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE